Megan McAteer, individually and on
behalf of all others similarly situated,

          Plaintiff,

v.

Target Corporation,

          Defendant.

Civil No. 18-349 (DWF/LIB)

**MEMORANDUM
OPINION AND ORDER**

___

Genevieve M. Zimmerman, Esq., Meshbesher & Spence LTD; Francis J. Flynn, Jr., Esq., Law Office of Francis J. Flynn, Jr.; Jasper D. Ward IV, Esq. and Alex Davis, Esq., Jones Ward PLC, counsel for Plaintiff.

John Q. Lewis, Esq., Karl A. Bekeny, Esq., and Jennifer L. Mesko, Esq., Tucker Ellis LLP, George W. Soule, Esq., Melissa R. Stull, Esq., and Anna L. Veit-Carter, Esq., Soule & Stull, counsel for Defendant.

___

## INTRODUCTION

This class action lawsuit involves Up & Up Makeup Remover Cleansing Towelettes – Evening Calm ("Makeup Remover Wipes") manufactured and sold by Defendant Target Corporation ("Target") and purchased by Plaintiff Megan McAteer ("Plaintiff") and consumers ("Class") throughout the United States. (Doc. No. 1 ("Compl.") ¶ 1.) This matter is before the Court on a Motion to Dismiss brought by Defendant. (Doc. No. 20.) For the reasons set forth below, the Court grants in part and

denies in part the motion as follows: Counts I through IV and Counts VIII through XIV are dismissed without prejudice and Counts V through VII are dismissed with prejudice.

## BACKGROUND

Plaintiff is a resident of Los Angeles, California. (Compl. ¶ 5.) In the Beverly Connection Target store in Los Angeles County, Plaintiff purchased a 25-count package of Makeup Remover Wipes for personal and/or household purposes from Target to wash her face. (Compl. ¶ 6; Doc. No. 28 at 23.). Target manufactures, designs, and sells the Makeup Remover Wipes in Target stores and on Target.com. (Compl. ¶ 7.) After using the Makeup Remover Wipes, Plaintiff experienced a burning sensation and her face turned bright red. (*Id.* ¶ 6.) Plaintiff used the over-the-counter medicines, Cortisone 10 and Benadryl, to treat these injuries. (*Id.*)

Plaintiff claims that Target markets the Makeup Remover Wipes with the following misleading statements: (1) "With up & up your satisfaction is *100% guaranteed or your money back*"; (2) "[U]ltra soft cloths" that "*gently* removes makeup, even waterproof mascara"; (3) "**No rinsing necessary**. For **all** skin types"; (4) "Compare to Neutrogena® Night Calming Makeup Remover Cleansing Towelettes"; (5) "[H]ypoallergenic"; and (6) "[A]lcohol free." (*Id.* ¶¶ 11, 12, 16, 17, 19, 20.) Plaintiff asserts that contrary to these representations, Target uses multiple "harsh chemicals and known human allergens in the Makeup Remover Wipes," which render the Makeup Remover Wipes "dangerous and unsafe for sale as an over the counter product." (*Id.* ¶¶ 22, 33.)

Plaintiff asserts fourteen causes of action relating to the allegedly misleading statements: (1) breach of contract (Count I); (2) breach of express warranty (Count II); (3) breach of implied warranty of merchantability (Count III); (4) violation of the Magnuson Moss Warranty Act (Count IV); (5) violation of the MN Consumer Fraud Act (Count V); (6) violation of the MN Uniform Deceptive Trade Practices Act (Count VI); (7) violation of the False Statement in Advertisement Act (Count VII); (8) negligence (Count VIII); (9) fraud (Count IX); (10) unjust enrichment (Count X); (11) declaratory judgment (Count XI); (12) violation of the CA Unfair Competition Law (Count XII); (13) violation of the CA Consumer Legal Remedies Act (Count XIII); and (14) false and misleading advertising (Count XIV).

Plaintiff alleges that she and the class suffered "injury in fact" and "lost money" because of their use of the Makeup Remover Wipes. (*Id.* ¶¶ 35, 145.) Specifically, Plaintiff claims that she and the Class did not receive "the benefit of their bargain," sustained "economic loss equal to the total purchase price of these unfit Products, or the difference in value between the Products as warranted and the Products as actually sold," and incurred "consequential and incidental damages." (*Id.* ¶¶ 61, 71, 78, 87.) Plaintiff also seeks declaratory judgment, disgorgement, and injunctive relief. (*Id.* ¶¶ 117, 159, 162, 178, 207.)

Target moves to dismiss Plaintiff's Complaint in its entirety. (*Id.*)

## DISCUSSION

**I.    Legal Standard**

In deciding a motion to dismiss under Rule 12(b)(6), a court assumes all facts in the complaint to be true and construes all reasonable inferences from those facts in the light most favorable to the complainant. *Morton v. Becker*, 793 F.2d 185, 187 (8th Cir. 1986). In doing so, however, a court does not need to accept as true wholly conclusory allegations, *Hanten v. Sch. Dist. of Riverview Gardens*, 183 F.3d 799, 805 (8th Cir. 1999), or legal conclusions drawn by the pleader from the facts alleged, *Westcott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990). A court deciding a motion to dismiss may consider the complaint, matters of public record, orders, materials embraced by the complaint, and exhibits attached to the complaint. *See Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999).

To survive a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Although a complaint need not contain "detailed factual allegations," it must contain facts with enough specificity "to raise a right to relief above the speculative level." *Id.* at 555. As the Supreme Court reiterated, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," will not pass muster under *Twombly*. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555). In summation, this standard "calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the claim]." *Twombly*, 550 U.S. at 556.

4

Federal Rule of Civil Procedure 9(b) provides that claims that sound in fraud or mistake, must be pled with particularity, including false advertising, unlawful trade practices, consumer fraud, and deceptive trade practices under Minnesota and California law. *See, e.g.*, Fed. R. Civ. P. 9(b); *United States ex rel. Joshi v. St. Luke's Hosp., Inc.*, 441 F.3d 552, 556 (8th Cir. 2006); *Kearns v Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009); *Tuttle v. Lorillard Tobacco Co.*, 118 F. Supp. 2d 954, 963 (D. Minn. 2000); *Select Comfort Corp. v. Sleep Better Store, LLC*, 796 F. Supp. 2d 981, 983-84 (D. Minn. 2011). To satisfy Federal Rule of Civil Procedure 9(b), the complaint must plead the "who, what, where, when, and how" of the alleged fraud. *St. Luke's Hosp.*, 441 F.3d at 556 (citations omitted). "[C]onclusory allegations that a defendant's conduct was fraudulent and deceptive are not sufficient to satisfy the rule." *Schaller Tel. Co. v. Golden Sky Sys., Inc.*, 298 F.3d 736, 746 (8th Cir. 2002) (quoting *Commercial Prop. v. Quality Inns Int'l, Inc.*, 61 F.3d 639, 644 (8th Cir. 1995)).

## II. Minnesota Statutory Claims

Plaintiff brings Counts V through VII under various Minnesota state consumer protection statutes. (Compl. ¶¶ 88-134.) The Court first considers Article III standing as a threshold issue because Plaintiff is neither a Minnesota resident, nor alleges that she purchased the Makeup Remover Wipes in Minnesota.

Standing under state law is not equivalent to standing under federal law. Article III standing is an absolute requirement to litigate in federal court. *Gill v. Whitford*, __ U.S. __, 138 S. Ct. 1916, 1929 (2018). Standing has three elements:

> First, the plaintiff must have suffered an "injury in fact"—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of— the injury has to be fairly . . . traceable to the challenged action of the defendant, and not . . . the result of the independent action of some third party not before the court. Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992) (quotations, citations, and footnote omitted).

Article III standing for state-law claims is necessarily lacking when no plaintiff is alleged to have purchased a product within the relevant state. *See, e.g.*, *In re Capacitors Antitrust Litig.*, 154 F. Supp. 3d 918, 926 (N.D. Cal. 2015) (collecting cases). This is because injury in fact is not established. *Id.* The Supreme Court has explicitly defined "injury in fact" as "an invasion of a *legally protected* interest" that is "not conjectural or hypothetical." *Lujan*, 504 U.S. at 560 (emphasis added). Without a named Plaintiff who has purchased a product within the relevant state, there can be no determination that an interest was harmed that was legally protected under the relevant state's laws.[1]

To be sure, the Minnesota statutes may permit non-residents to bring suit, and the Minnesota state judiciary is not constrained by Article III's requirements. *See* U.S. Const. art. III § 1. Plaintiff may have perfectly viable causes of action in Minnesota state court. But Plaintiff cannot satisfy the Article III injury-in-fact requirement. Plaintiff is

---

[1] Plaintiff does not purport to bring the Minnesota state-law claims on behalf of putative class members. The Court observes, however, that to the extent Plaintiff posits that putative class members suffered a particular injury in Minnesota, those members are not currently before the Court and any allegation of such injury is mere conjecture.

6

not a Minnesota resident and acknowledges that she purchased the Makeup Remover Wipes in California. Consequently, Plaintiff lacks the requisite Article III standing to litigate these causes of action in federal court. Based on the foregoing, the Court must dismiss Counts V through VII for lack of constitutional standing.[2]

### III. Plaintiff's Material Misrepresentations and Omissions Claims

Plaintiff alleges that she was deceived by Target's representations that the Makeup Remover Wipes "gently remove makeup" and are "hypoallergenic" because she developed an allergic reaction causing her to experience a burning sensation that turned her face bright red. (Compl. ¶¶ 3, 6, 12, 19.) Plaintiff argues that "reasonable consumers" would expect that "hypoallergenic," "Evening Calm," and "ultra soft cloths" that "gently removes" makeup in "one easy step" will cause a burning sensation or for an individual's face to turn bright red. (Doc. No. 28 at 12.)

Target, however, alleges that the above-stated terms constitute non-actionable puffery and no reasonable consumer would be misled by the representations. (Doc.

---

[2] Even if Plaintiff had standing to bring Counts V through VII, she would encounter a separate problem with her Minnesota False Statement in Advertising Act ("MFSAA") claim. The MFSAA requires the challenged advertisement to be "made, published, disseminated, circulated, or placed before the public, in this state." Minn. Stat. § 325F.67 (emphasis added). It is insufficient that the statements "were systematically designed, orchestrated, promulgated and disseminated" from a Minnesota corporation's home office or that a defendant maintains a principal place of business in Minnesota. *See Parkhill v. Minnesota Mut. Life Ins. Co.*, 995 F. Supp. 983 (D. Minn. 1998) (dismissing plaintiff's claim because the false representations were made to him in Florida). Here, Plaintiff purchased the Makeup Remover Wipes and saw the challenged representations in California. Plaintiff does not allege that she purchased the product or saw allegedly false representations in Minnesota. (*See generally* Compl. ¶¶ 119-134.) Moreover, Plaintiff is a California resident. (*Id.* ¶ 5.) These circumstances cannot sustain an action under the MFSAA.

7

No. 22 at 14.) Plaintiff responds that terms such as "gentle" and "hypoallergenic" do not constitute puffery because they reference and support specific characteristics of the Makeup Remover Wipes. (*Id.*)

Puffery exists in two general forms: "(1) exaggerated statements of bluster or boast upon which no reasonable consumer would rely; and (2) vague or highly subjective claims of product superiority, including bald assertions of superiority." *Am. Italian Pasta Co. v. New World Pasta Co.*, 371 F.3d 387, 390-91 (8th Cir. 2004). "Assertions that are too subjective and vague and wholly dependent on an individual's interpretation, and "lack[] an empirical benchmark to provide any indicia of measurability" are non-actionable puffery. *Browe v. Evenflo Co., Inc.*, Civ. No. 14-4690, 2015 WL 3915868, at *6 (D. Minn. June 25, 2015); *see also Newcal Indus., Inc. v. Ikon Office Sol.*, 513 F.3d 1038, 1053 (9th Cir. 2008) ("Ultimately, the difference between a statement of fact and mere puffery rests in the specificity or generality of the claim. . . . Thus, a statement that is quantifiable, that makes a claim as to the 'specific or absolute characteristics of a product,' may be an actionable statement of fact while a general, subjective claim about a produce is nonactionable puffery."). Further, misleading advertising claims "must be evaluated from the vantage of a reasonable consumer." *Freeman v. Time, Inc.*, 68 F.3d 285, 289 (9th Cir. 1995) (internal quotation marks and citation omitted); *Am. Italian Pasta*, 371 F.3d at 390-91.

In *Browe*, the court found that the representation of "easy to get your child in and out of the seat" does not provide the requisite degree of specificity to make the statement actionable. *Browe*, 2015 WL 3915868, at *6. Further, in *In re Hardieplank Fiber*

8

*Cement Siding Litig*, the court found that "superior to wood and vinyl," and "resists hot and cold temperatures" represents non-actionable puffery. *In re Hardieplank Fiber Cement Siding Litig.*, 284 F. Supp. 3d 918, 34, 51 (D. Minn. 2018). To the contrary, in *Williams*, Plaintiff's claims survived a motion to dismiss where the product's packaging stated "fruit juice snacks" and pictured several different fruits and juices that were not contained in the product. *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 939 n.3 (9th Cir. 2008).

Here, like in *Browe*, Plaintiff's assertion that Target's representation of the Makeup Remover Wipes "gently removes makeup, even waterproof mascara"; "no rinsing necessary"; "for all skin types"; and are "ultra soft" comprises vague and highly subjective assertions that "lack[] an empirical benchmark to provide any indicia of measurability." *See, e.g.*, *Browe*, 2015 WL 3915868, at *6. Unlike *Williams*, where the representation depicts *specific* fruits not contained in the snacks, Target's representations about the gentleness of the Makeup Remover Wipes are non-specific, unquantifiable, and subjective. Thus, Target's representations about the gentleness of the Makeup Remover Wipes are similar to the non-actionable puffery dismissed at the pleadings stage in *Browe*.

Further, Plaintiff has not alleged that the Makeup Remover Wipes are more likely to cause allergic reactions than competing products. The Food and Drug Administration defines "hypoallergenic" to mean that "the products making the claims are less likely to cause allergic reactions than competing products." Food & Drug Administration, "Hypoallergenic" Cosmetics,

9

https://www.fda.gov/Cosmetics/Labeling/Claims/ucm2005203.htm (last visited July 10, 2018). Here, Target does not represent that no consumer will have an adverse reaction to the product when it labels the Makeup Remover Wipes "hypoallergenic." (Doc. No. 22 at 16.) It does, however, represent that the Makeup Remover Wipes will not produce an irritating or allergic reaction in the majority of consumers. (*Id.*) Nothing in Plaintiff's allegations identify how or why the Makeup Remover Wipes are more likely to cause allergic reactions than competing products. (*Id.*) Plaintiff's pleadings are insufficient to state actionable claims based on Target's "hypoallergenic" claim.

Plaintiff further concedes that Target lists its ingredients on the Makeup Remover Wipes and defines "alcohol free" on the Makeup Remover Wipes as not containing ethanol, isopropanol or rubbing alcohol. (Compl. ¶ 22.) Here, the list of ingredients on the packaging does not include any of the three "alcohol" ingredients specified on the packaging; thus, Target's representation that the Makeup Remover Wipes are "alcohol free" is true as a matter of law. (Doc. No. 22 at 17.) Therefore, Counts I through IV and Counts VIII through XIV are dismissed without prejudice.

## ORDER

Based on the files, records, and proceedings herein, and for the reasons stated above, **IT IS HEREBY ORDERED** that:

1. Target's Motion to Dismiss (Doc. No. [20]) is **GRANTED** and Counts I through IV and Counts VIII through XIV discussed herein are **DISMISSED WITHOUT PREJUDICE**; and

2. Target's Motion to Dismiss (Doc. No. [20]) is **GRANTED** and Count V through Count VII discussed herein are **DISMISSED WITH PREJUDICE**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: July 26, 2018	s/Donovan W. Frank
DONOVAN W. FRANK
United States District Judge